Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Rovio Entertainment Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROVIO ENTERTAINMENT CORPORATION,<br><br>*Plaintiff*<br><br>v.<br><br>ALL PRINTED CLOTHES FACTORY STORE, DAJUN CLOTHES STORE, DEHUA BEAUTY RICH ARTS & CRAFTS CO., LTD., DONGGUAN DREAMY TOY CO., LTD., DONGGUAN JIELI PLASTIC TOYS CO.,LTD, DONGGUAN RICH POWER TIN MFG. LTD., DONGGUAN SHANG ZHEN ART GIFTS CO., LTD., DONGGUAN SIYUAN TOY CO., LIMITED, ETST WENDY CHILDREN'S FACTORY OUTLET STORE, ETST WENDY FUNNY STORE, EYEMASK666 STORE, GOLDEN CHILDHOOD01 STORE, GOLDEN CRADLE KIDS STORE, GOLDEN CRADLE STORE, GT COMMANDER STORE, GUANGZHOU CAIDAO INDUSTRIAL CO., LTD., GUANGZHOU KAI RONG INDUSTRIAL CO., LTD., GUANGZHOU TAKU CULTURE MEDIA CO., LTD., GUANGZHOU TOP GLAMOUR COSMETIC CO., LTD., HEARTBEAT PLUSH STORE, HEBEI LINGMOU TRADING CO., LTD., HEY SURPRISE STORE, HIGH QUALITY 847 STORE, HIGH QUALITY 999 STORE, HONGCHENG'S STORE, JEBMQ STORE, | **CIVIL ACTION No. ___**<br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

JUESEJUJIA STORE, KIDS GAME TSHIRT FACTORY STORE, LABELZONE OFFICIAL STORE, LL-PLUSH STORE, MIAY'S KIDS ROOM STORE, MR YE. STORE, MUGIVALA FRANCHISED STORE, NANCHANG KEDA STATIONERY GIFTS INDUSTRIAL CO.,LTD, NEW OOPS STORE, NINGBO GMT LEISURE PRODUCTS CO., LTD., OU YIN STORE, OUR WORLD CHILDREN STORE, PANLANDE ACCESSORIES STORE, PARAGLIDING STORE, PERSONALIZEDSHOES STORE, PLEASANT KEYCHAIN STORE, PRINT CLOTHES FACTORY DISCOUNT STORE, PRINTING CHILDREN'S CLOTHES STORE, PUJIANG MINGJIU E-COMMERCE CO., LTD., QUALITY CHILD TOY STORE, QUANZHOU GUANGHE MINGLIANG TRADING CO., LTD., QUANZHOU ORANGE PEEL E-COMMERCE CO., LTD., QUANZHOU YOHO YOHO TRADING CO., LTD., SHANG HAI ROSE STORE, SHANGHAI FUNNYBUDDY CO., LTD., SHANTOU YACHAO TRADING CO., LTD., SHENZHEN NEWJOY TECHNOLOGY CO., LTD., SHENZHEN USMARTALL TECHNOLOGY CO., LTD., SHENZHEN YOKO LABELWORKS LIMITED, SHOP5282050 STORE, SHOP5379093 STORE, SHOP5788211 STORE, SHOP910323284 STORE, SHOP910364092 STORE, SHOP911252065 STORE, SHOP911297209 STORE, SHOP911602222 STORE, SHOP911758373 STORE, SMILING CENTER STORE, SOXTOWN (SHANGHAI) INDUSTRIAL CO., LTD., SUNYDREAMS ANIMATION STORE, TAKE OFF STORE, VANQUISH A DIFFERENT STORE, WANCHEN STORE, WENZHOU HIGH AND LONG CO., LTD., XIAMEN HULI HUANGXIAODUAN PET PRODUCTS STORE, XINXIANG YINGLAIDA IMPORT AND EXPORT TRADING CO., LTD., YANGZHOU TIRIS CRAFTS CO., LTD., YANGZHOU YIYABAO TOYS & GIFTS CO., LTD., YEJIANFEIXING STORE, YIWU BIWEI TRADE CO., LTD., YIWU DONGHONG KNITTING CO., LTD., YIWU HEPIN FOOD CO., LTD., YOUPIN TOY STORE, YOUR DIARY STORE, YULIN JEWELLERY STORE, YUZENGXIANGBABY

STORE, ZHEN XIANG TECHNOLOGY CO.,
LTD., ZHENGHONGKAI03'S STORE and ZHUO
JIU STORE,

*Defendants*

## GLOSSARY

| Term | Definition |
| --- | --- |
| **Plaintiff or Rovio** | Rovio Entertainment Corporation |
| **Defendants** | All Printed Clothes Factory Store, Dajun clothes Store, Dehua Beauty Rich Arts & Crafts Co., Ltd., Dongguan Dreamy Toy Co., Ltd., Dongguan Jieli Plastic Toys Co.,Ltd, Dongguan Rich Power Tin Mfg. Ltd., Dongguan Shang Zhen Art Gifts Co., Ltd., Dongguan Siyuan Toy Co., Limited, ETST WENDY Children's Factory Outlet Store, ETST WENDY Funny Store, Eyemask666 Store, Golden childhood01 Store, Golden Cradle Kids Store, Golden cradle Store, GT Commander Store, Guangzhou Caidao Industrial Co., Ltd., Guangzhou Kai Rong Industrial Co., Ltd., Guangzhou Taku Culture Media Co., Ltd., Guangzhou Top Glamour Cosmetic Co., Ltd., Heartbeat Plush Store, Hebei Lingmou Trading Co., Ltd., Hey Surprise Store, High quality 847 Store, High quality 999 Store, HongCheng's Store, JEBMQ Store, juesejujia Store, Kids game tShirt Factory Store, labelzone Official Store, LL-plush Store, Miay's Kids Room Store, Mr Ye. Store, MUGIVALA Franchised Store, Nanchang Keda Stationery Gifts Industrial Co.,ltd, NEW OOPS Store, Ningbo GMT Leisure Products Co., Ltd., Ou Yin Store, Our World Children Store, Panlande accessories Store, Paragliding Store, Personalizedshoes Store, Pleasant keychain Store, print clothes factory discount Store, printing children's clothes Store, Pujiang Mingjiu E-Commerce Co., Ltd., Quality child toy Store, Quanzhou Guanghe Mingliang Trading Co., Ltd., Quanzhou Orange Peel E-Commerce Co., Ltd., Quanzhou Yoho Yoho Trading Co., Ltd., Shang hai Rose Store, Shanghai Funnybuddy Co., Ltd., Shantou Yachao Trading Co., Ltd., Shenzhen Newjoy Technology Co., Ltd., Shenzhen Usmartall Technology Co., Ltd., Shenzhen Yoko Labelworks Limited, Shop5282050 Store, Shop5379093 Store, Shop5788211 Store, Shop910323284 Store, Shop910364092 Store, Shop911252065 Store, Shop911297209 Store, Shop911602222 Store, Shop911758373 Store, smiling center Store, Soxtown (Shanghai) Industrial Co., Ltd., Sunydreams Animation Store, take off Store, Vanquish a different Store, WANCHEN Store, Wenzhou High And Long Co., Ltd., Xiamen Huli Huangxiaoduan Pet Products Store, |

|  | Xinxiang Yinglaida Import And Export Trading Co., Ltd., Yangzhou Tiris Crafts Co., Ltd., Yangzhou Yiyabao Toys & Gifts Co., Ltd., YeJianFeiXing Store, Yiwu Biwei Trade Co., Ltd., Yiwu Donghong Knitting Co., Ltd., Yiwu Hepin Food Co., Ltd., Youpin toy Store, Your Diary Store, Yulin JEWELLERY Store, YuZengXiangBaby Store, Zhen Xiang Technology Co., Ltd., Zhenghongkai03's Store and ZHUO JIU Store |
|---|---|
| **Alibaba** | Alibaba.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress.com, an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Addresses** | 55 W 105th Street, Apt. 16, New York, NY, 10025<br>244 Madison Avenue, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Hagelstam Dec.** | Declaration of Robert Hagelstam in Support of Plaintiff's Application |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of Plaintiff's Application |
| **Angry Birds** | A puzzle video game, where players use a slingshot to launch birds at pigs stationed at various structures with the ultimate goal of destroying all the pigs |
| **Angry Birds Products** | A wide variety of consumer products such as toys, games and apparel associated with and/or related to the Angry Birds Marks |
| **Angry Birds Content** | Various entertainment (including the *Angry Birds* |

| | |
|---|---|
| | *Movie* in 2016 and *Angry Birds Movie 2 in 2019*), consumer product in brand licensing and over a dozen different versions, special editions and spin-offs of the Angry Birds game for various platforms |
| **Angry Birds Marks** | U.S. Trademark Registration Nos.: 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 8, 9, 16, 20, 21, 25, 30, 36 and 41; U.S. Trademark Registration Nos. 6,331,350, 4,252,003, 4,145,113 and 3,988,064 for , for a wide variety of goods in Classes 3, 9, 14, 16, 18, 21, 24, 25, 28, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark Registration No. 4,493,031 for , for a wide variety of goods in Classes 9, 16, 18, 20, 23, 28 and 41; U.S. Trademark Registration No. 4,489,982 for , for a wide variety of goods in Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 35, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark Registration No, 4,489,981 for  for a wide variety of goods in Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark Registration No. 4,489,980 for  for a wide variety of goods in Classes 9, 16, 28 and 41; U.S. Trademark Registration No. 4,489,979 for  for a wide variety of goods in Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark Registration No. 4,486,763 for |

 for a wide variety of goods in Classes 9, 16, 18, 25, 28, 30, 32, 36 and 41; U.S. Trademark  Registration No. 4,486,762 for for goods in Class 28; U.S. Trademark Registration No. 4,545,679 for  for a wide variety of goods in Classes 9, 16, 28 and 43; U.S. Trademark Registration No. 4,545,680 for  for a wide variety of goods in Classes 9, 16, 18, 20, 28 and 41; U.S. Trademark Registration No. 4,697,586 for  for a wide variety of goods in classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark Registration No. 4,843,434 for  for a wide variety of goods in classes 3, 5, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark Registration No. 4,683,222 for , for a wide variety of goods in classes 9, 14, 16, 18, 20, 21, 24, 25, 28, 35, 38 and 41; U.S. Trademark Registration No. 4,493,055 for , for a wide variety of goods in Classes 9, 16, 28 and 41; U.S. Trademark Registration No. 4,557,817

| | |
|---|---|
| |  for , for a wide variety of goods in Classes 9, 16, 25, 28 and 41; U.S. Trademark Registration No. 4,946,692 for "HOCKEYBIRD", for a wide variety of goods in classes 16, 24 and 25; U.S. Trademark Registration No. 4,829,609 for "ANGRY" for a variety of goods in Classes 9 and 28; U.S. Trademark Registration No. 4,152,185 for "MIGHTY EAGLE", for a wide variety of goods in Class 28; U.S. Trademark Registration No. 4,162,825 for "BAD PIGGIES", for a wide variety of goods in Class 9 and U.S. Trademark No. 4,607,595 for "ROVIO", for a wide variety of goods in classes 9, 16, 28, 35, 36, 38 and 41 |
| **Counterfeit Products** | Products bearing or used in connection with the Angry Birds Marks, and/or products in packaging and/or containing labels bearing the Angry Birds Marks, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Angry Birds Marks and/or products that are identical or confusingly or substantially similar to the Angry Birds Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User |

|  | Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
|---|---|
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly by Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, by and through their undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.    This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Angry Birds Marks, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Angry Birds Products by Defendants.

## JURISDICTION AND VENUE

2.    This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

3.     Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.     Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S.,

and specifically New York.

c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to one of the New York Addresses.

d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

e.    Upon information and belief, Defendants are aware of Plaintiff, its Angry Birds Products and Angry Birds Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## **THE PARTIES**

5.    Plaintiff Rovio Entertainment Corporation is a corporation organized and existing under the laws of Finland with an address of Keilaranta 7, Espoo Finland FI-02150.

6.    Upon information and belief, Defendants are merchants on the Alibaba and/or AliExpress online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with a principal place of business at the addresses identified, if any, in the printouts of screenshots of Defendants' Merchant Storefronts in **Exhibit A**.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Angry Birds Products

7.    Rovio is a leading media entertainment company that creates, develops and publishes mobile games, which have been downloaded over 4.5 billion times.

8.    One of Rovio's most successful creations is Angry Birds – a puzzle video game, where players use a slingshot to launch birds at pigs stationed at various structures with the ultimate goal of destroying all the pigs. Rovio has expanded the Angry Birds game to include various entertainment (including the *Angry Birds Movie* in 2016 and *Angry Birds Movie 2 in 2019*), consumer product in brand licensing and over a dozen different versions, special editions and spin-offs of the Angry Birds game for various platforms.[2]  Since its release in 2009, the Angry Birds games have been downloaded more than 4.5 billion times[3] and include 66.8 million monthly active users across all platforms, including both regular and special editions.[4]

9.    Rovio has been nominated for and won multiple awards for the various versions, special editions and spin-offs of the Angry Birds games. In February 2010, Angry Birds was a nominee for the "Best Casual Game" award at the 6th annual International Mobile Gaming Awards in Barcelona, Spain. In June 2010, Macworld named Angry Birds as the winner of the 2010 Macworld Award for "Best iPhone Entertainment & Lifestyle App". In September 2010, IGN named Angry Birds as the fourth best iPhone game of all time.  At the 15th edition of the Webby Awards in 2011, Angry Birds was awarded "Best Game for Handheld Devices". In April 2011,

---

[2] The different versions and special editions of the Angry Birds game include but are not limited to: Angry Birds Seasons (2010), Angry Birds Rio (2011), Angry Birds Friends (2012), Angry Birds Space (2012), Angry Birds Star Wars (2012), Angry Birds Start Wars II (2013), Angry Birds Go! (2013), Angry Birds Epic (2014), Angry Birds Transformers (2014), Angry Birds Fight (2013) and Angry Birds Under Pigstruction (2015).  The spin-offs of the Angry Birds game include but are not limited to: Bad Piggies (2012), Angry Birds Stella (2014) and Angry Birds Stella POP! (2015).
[3] Angry Birds, *Angry Birds 10 Years*, https://www.angrybirds.com/10-years/ (last visited July 29, 2021).
[4] Video Game Stats, *Angry Birds Stats, Player Counts, Facts and News*, https://videogamesstats.com/angry-birds-stats-and-facts/ (last updated July 26, 2021).

Angry Birds won both the "Best Game App" and "App of the Year" at the UK Appy Awards.[5]

10. Rovio and its Angry Birds Content have received widespread press and media coverage. News stories, reports, reviews, features, press releases and blog posts acclaiming the Angry Birds games and its immense popularity have appeared in worldwide print and online publications such as: USA Today, TIME, The New York Times, The Washington Post, Forbes, The Los Angeles Times, The Chicago Tribune, The Associated Press, Reuters and the Huffington Post, among many others.

11.     Rovio has developed and initiated an extensive worldwide licensing program for a wide variety of consumer products such as toys, games and apparel associated with and/or related to the Angry Bird trademarks.

12. Rovio sells its Angry Birds Products through its online shops accessible through the Angry Birds website at https://www.angrybirds.com/shop/, to a number of countries, including but not limited to, United States, Greece, Malaysia, Belgium, Germany, etc. In the United States, Rovio sells its Angry Birds Products throughout major retailers and online marketplaces, including, but not limited to Walmart and Amazon.

13. The Angry Birds Products retail from $5.99 (toys) to $54.99 (sweatshirts).

14. Rovio has gained significant common law trademark and other rights in the Angry Birds Mark and Angry Birds Products through its use, advertising, and promotion.

15. Rovio Entertainment Corporation is the owner of all right, title and interest to the following U.S. Trademark Registration numbers through.

16. Rovio is also the owner[6] of the following U.S. Trademark Registration Nos.: 4,200,545,

---

[5] Dan Whitworth, *Angry Birds triumphs at Appy Award*, BBC (Apr. 11, 2011), https://www.bbc.com/news/newsbeat-13045709.
[6] A true and correct copy of the owner name change recordation to Rovio Entertainment Corporation for U.S. Trademark Registration No. 4,200,545 is included in **Exhibit B.** Upon further request, Plaintiff can provide the owner name change

4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 8, 9, 16,

20, 21, 25, 30, 36 and 41; U.S. Trademark Registration Nos. 6,331,350, 4,252,003, 4,145,113

and 3,988,064 for , for a wide variety of goods in Classes 3, 9, 14, 16, 18, 21, 24, 25,

28, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark Registration No. 4,493,031 for

, for a wide variety of goods in Classes 9, 16, 18, 20, 23, 28 and 41; U.S. Trademark

Registration No. 4,489,982 for , for a wide variety of goods in Classes 3, 5, 9, 14, 15,

16, 18, 20, 21, 24, 35, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark

Registration No, 4,489,981 for  for a wide variety of goods in Classes 3, 5, 9, 14,

15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark

Registration No. 4,489,980 for  for a wide variety of goods in Classes 9, 16, 28 and

41; U.S. Trademark Registration No. 4,489,979 for  for a wide variety of goods in

Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and

recordation to Rovio Entertainment Corporation for all Angry Bird Marks listed in Paragraph 12.

6

43; U.S. Trademark Registration No. 4,486,763 for  for a wide variety of goods in

Classes 9, 16, 18, 25, 28, 30, 32, 36 and 41; U.S. Trademark Registration No. 4,486,762 for

 for goods in Class 28; U.S. Trademark Registration No. 4,545,679 for  for a

wide variety of goods in Classes 9, 16, 28 and 43; U.S. Trademark Registration No. 4,545,680

for  for a wide variety of goods in Classes 9, 16, 18, 20, 28 and 41; U.S. Trademark

Registration No. 4,697,586 for  for a wide variety of goods in classes 3, 5, 9, 14, 15,

16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark

Registration No. 4,843,434 for  for a wide variety of goods in classes 3, 5, 9, 14,

16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43; U.S. Trademark

Registration No. 4,683,222 for , for a wide variety of goods in classes 9, 14, 16, 18,

20, 21, 24, 25, 28, 35, 38 and 41; U.S. Trademark Registration No. 4,493,055 for ,

for a wide variety of goods in Classes 9, 16, 28 and 41; U.S. Trademark Registration No.

4,557,817 for , for a wide variety of goods in Classes 9, 16, 25, 28 and 41; U.S. Trademark Registration No. 4,946,692 for "HOCKEYBIRD", for a wide variety of goods in classes 16, 24 and 25; U.S. Trademark Registration No. 4,829,609 for "ANGRY" for a variety of goods in Classes 9 and 28; U.S. Trademark Registration No. 4,152,185 for "MIGHTY EAGLE", for a wide variety of goods in Class 28; U.S. Trademark Registration No. 4,162,825 for "BAD PIGGIES", for a wide variety of goods in Class 9 and U.S. Trademark No. 4,607,595 for "ROVIO", for a wide variety of goods in classes 9, 16, 28, 35, 36, 38 and 41.  True and correct copies of the registration certificates covering the Angry Birds Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

17. The Angry Birds Marks are currently in use in commerce in connection with the Angry Birds Products.

18. The success of the Angry Birds Products is due in large part to Rovio's marketing, promotion and distribution efforts. These efforts include, but are not limited to, the advertising and promotion of the Angry Birds Products through the product catalogue on Rovio's Website, print and internet-based advertising and publicity for the Angry Birds Products, and placement of the Angry Birds Products at dozens of authorized major retail outlets.

19. Rovio's success is also due to its use of high-quality materials and processes in making the Angry Birds Products.

20. Additionally, Rovio owes a substantial amount of the success of the Angry Birds Products to its consumers and word-of-mouth buzz that its consumers have generated.

21. Rovio's efforts, the quality of its Angry Birds Products, its marketing, promotion and distribution efforts, as well as the word-of-mouth buzz generated by its consumers have made

the Angry Birds Products and Angry Birds Marks prominently placed in the minds of the public. Retailers, retail buyers, consumers and members of the public have become familiar with the Angry Birds Products and associate them exclusively with Rovio.

22. As a result of such associations, Rovio, its Angry Birds Products and Angry Birds Marks have acquired a valuable reputation and goodwill among the public.

23. Rovio has gone to great lengths to protect its interests in and to the Angry Birds Products and Angry Birds Marks.  No one other than Rovio is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Angry Birds Marks without the express written permission of Rovio.

24. Particularly in light of Rovio's success, its Angry Birds Products, as well as the reputation it has gained, Rovio and its Angry Birds Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Rovio has amassed in its Angry Birds Products and Angry Birds Marks. Rovio routinely investigates and enforces against such activities.

### Alibaba, AliExpress and Defendants' User Accounts

25.    Alibaba and AliExpress are online marketplace and e-commerce platforms which allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell and ship their wholesale and retail products originating from China to consumers worldwide and specifically to consumers residing in the U.S., including New York.

26.    As some of the leaders of China's e-commerce and digital retail market, Alibaba and AliExpress have generated hundreds of billions in sales worldwide. [7]   International markets,

---

[7] *See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2019, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[8] The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[9] Additionally, according to *Business Insider*, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[10]

27.     As recently addressed in the *Wall Street Journal*, *Fortune* and the *New York Times* and other reputable publications,[11] several federal lawsuits have been filed against China-based sellers on Alibaba and AliExpress (along with these same online marketplace platforms themselves and stand-alone websites)[12] in light of the astronomical number of counterfeit and infringing products are offered for sale and sold at a rampant rate.[13]

---

[8] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

[9] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[10] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[11] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; *see also* Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* THE NEW YORK TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[12] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y.

[13] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits,* WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; *see also* Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit*

28.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and Merchant Storefronts on Alibaba and/or AliExpress as well as potential yet undiscovered additional online marketplace platforms.

29.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

30.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

31.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

### Defendants' Wrongful and Infringing Conduct

32.     Particularly in light of Plaintiff's success with its Angry Birds Products, as well as the reputation they have gained, Plaintiff and its Angry Birds Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Angry Birds Products and Angry Birds Marks and Plaintiff investigates and enforces against such activities.

33.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or

---

*problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Printouts of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference.

34.    Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Angry Birds Products or to use the Angry Birds Marks, or any marks that are confusingly similar to the Angry Birds Marks.

35.    Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Angry Birds Products, only with minor variations that no ordinary consumer would recognize.

36.    During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified shipping addresses located at one of the New York Addresses and verified that each Defendant provides shipping to the New York Addresses. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Addresses are included in **Exhibit C**.

37.    Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit C**.

38.    For example, below on the left is an image of one of Plaintiff's Angry Birds Products.

Depicted further below is a listing for Defendant ETST WENDY Funny Store's Counterfeit Product ("ETST WENDY Funny Store Infringing Listing" and "ETST WENDY Funny Store Counterfeit Product," respectively). The ETST WENDY Funny Store Infringing Listing appears on ETST WENDY Funny Store's Merchant Storefront, https://www.aliexpress.com/store/900244283, and offers the ETST WENDY Funny Store Counterfeit Product for $4.97 per item, using, featuring and/or incorporating one or more of the Angry Birds Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing. Further, the ETST WENDY Funny Store Counterfeit Product is virtually identical to one of Plaintiff's Angry Birds Products and features and/or incorporates one or more of the Angry Birds Marks. There is no question that the ETST WENDY Funny Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Angry Birds Products or that the ETST WENDY Funny Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Angry Birds Marks:

| **Angry Birds Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

39.     By way of another example, below on the left is an image of one of Plaintiff's Angry Birds Products. Depicted further below is a listing for Defendant Golden cradle Store's Counterfeit Product ("Golden cradle Store Infringing Listing" and "Golden cradle Store Counterfeit Product," respectively). The Golden cradle Store Infringing Listing appears on Defendant Golden cradle Store's Merchant Storefront, https://www.aliexpress.com/store/911330101, and offers the Golden cradle Store Counterfeit Product for $4.19 per item, using, featuring and/or incorporating one or more of the Angry Birds Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing. Further, the Golden cradle Store Counterfeit Product is virtually identical to one of Plaintiff's Angry Birds Products and features and/or incorporates one or more of the Angry Birds Marks. There is no question that the Golden cradle Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Angry Birds Products or that the Golden cradle Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Angry Birds Marks:

| **Angry Birds Product** | **Defendant's Counterfeit Product** |
| --- | --- |

 

40.     As another example, below on the left is an image of one of Plaintiff's Angry Birds Products.  Depicted further below is a listing for Defendant Dongguan Siyuan Toy Co., Limited's Counterfeit Product ("Dongguan Siyuan Toy Co., Limited Infringing Listing" and "Dongguan Siyuan Toy Co., Limited Counterfeit Product," respectively).  The Dongguan Siyuan Toy Co., Limited Infringing Listing appears on Defendant Dongguan Siyuan Toy Co., Limited's Merchant Storefront, https://siyuantoy.en.alibaba.com/, and offers the Dongguan Siyuan Toy Co., Limited Counterfeit Product for $1.25 per item, using, featuring and/or incorporating one or more of the Angry Birds Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing.  Further, the Dongguan Siyuan Toy Co., Limited Counterfeit Product is virtually identical to one of Plaintiff's Angry Birds Products and features and/or incorporates one or more of the Angry Birds Marks.  There is no question that the Dongguan Siyuan Toy Co., Limited Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Angry Birds Products or that the Dongguan Siyuan Toy Co., Limited Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of one or more of the Angry Birds Marks:

**Angry Birds Product**                    **Defendant's Counterfeit Product**

          

15

41.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Angry Birds Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Angry Birds Marks in order to confuse consumers into believing that such Counterfeit Products are the Angry Birds Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Angry Birds Marks, after Plaintiff obtained federal registrations in the Angry Birds Marks, as alleged above, and after Plaintiff's Angry Birds Products and Angry Birds Marks became well-known to the purchasing public.

42.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Angry Birds Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Angry Birds Products, and in bad faith adopted the Angry Birds Marks.

43.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Angry Birds Marks and Angry Birds Products.

44.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

45.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Angry Birds Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

46.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

47.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

48.     Plaintiff is the exclusive owner of all right and title to the Angry Birds Marks.

49.     Plaintiff has continuously used the Angry Birds Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

50.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Angry Birds Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Angry Birds Marks and/or used spurious designations that are identical with, or indistinguishable from, the Angry Birds Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

51.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing

public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Angry Birds Marks through their participation in such activities.

52.    Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Angry Birds Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

53.    Defendants' unauthorized use of the Angry Birds Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Angry Birds Marks.

54.    Defendants' actions constitute willful counterfeiting of the Angry Birds Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

55.    As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Angry Birds Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause

such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Angry Birds Marks.

56.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

57.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58.     Plaintiff has continuously used the Angry Birds Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

59.     Plaintiff, as owner of all right, title and interest in and to the Angry Birds Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

60.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Angry Birds Marks.

61.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Angry Birds Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Angry Birds Products and/or related products bearing the Angry Birds

19

Marks into the stream of commerce.

62.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Angry Birds Marks and/or which are identical or confusingly similar to the Angry Birds Marks.

63.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Angry Birds Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

64.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Angry Birds Marks.

65.     Defendants' egregious and intentional use of the Angry Birds Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Angry Birds Products or are otherwise associated with, or authorized by, Plaintiff.

66.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Angry Birds Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

67.     Defendants' continued, knowing, and intentional use of the Angry Birds Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Angry Birds Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

68.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Angry Birds Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Angry Birds Marks.

69.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

70.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71.     Plaintiff, as the owner of all right, title and interest in and to the Angry Birds Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

72.     The Angry Birds Marks are inherently distinctive and/or have acquired

distinctiveness.

73.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Angry Birds Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Angry Birds Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Angry Birds Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

74.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Angry Birds Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Angry Birds Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Angry Birds Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of

Plaintiff and its Angry Birds Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

75.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Angry Birds Marks would cause confusion, mistake or deception among purchasers, users and the public.

76.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Angry Birds Products and Angry Birds Marks.

77.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Angry Birds Products and by depriving Plaintiff of the value of its Angry Birds Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Angry Birds Marks.

78.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Common Law]**

79.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

80.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Angry Birds Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

81.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

82.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

83.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

84.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Angry Birds Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Angry Birds Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

85.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.     In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced

discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.     For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Angry Birds Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.     For an award of damages to be proven at trial for common law unfair competition;

F.     For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

      ii.   directly or indirectly infringing in any manner any of Plaintiff's Angry Birds

Marks;

iii.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Angry Birds Marks to identify any goods or services not authorized by Plaintiff;

iv.  using any of Plaintiff's Angry Birds Marks or any other marks that are confusingly similar to the Angry Birds Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.  using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.  engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.  engaging in any other actions that constitute unfair competition with Plaintiff;

viii.  engaging in any other act in derogation of Plaintiff's rights;

ix.  from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.  from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.  instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.  For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Angry Birds Marks, or bear any marks that are confusingly similar to the Angry

Birds Marks;

H.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's Angry Birds Marks, or bear any marks that are confusingly similar to the Angry Birds Marks pursuant to 15 U.S.C. § 1118;

I.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.      For Plaintiff's reasonable attorneys' fees;

M.      For all costs of suit; and

N.      For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.


Dated: September 10, 2021                          Respectfully submitted,

                                                  EPSTEIN DRANGEL LLP


                                         BY: _____
                                              Danielle S. Futterman (DY 4228)
                                              dfutterman@ipcounselors.com
                                              Jason M. Drangel (JD 7204)
                                              jdrangel@ipcounselors.com
                                              Ashly E. Sands (AS 7715)
                                              asands@ipcounselors.com
                                              60 East 42nd Street, Suite 2520
                                              New York, NY 10165
                                              Telephone:    (212) 292-5390
                                              Facsimile:    (212) 292-5391
                                              *Attorneys for Plaintiff*
                                              *Rovio Entertainment Corporation*